Lawrence **MICKEY**, Respondent,

v.

**BNSF RAILWAY COMPANY,**
Appellant.

No. ED 95110.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 29, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 10, 2012.

Application for Transfer Denied March 6, 2012.

Thomas B. Weaver, Jeffery T. McPherson, William A. Brasher, Thomas L. Bell, St. Louis, MO, for Appellant.

Jerome J. Schlichter, Roger C. Denton, Michael A. Wolff, St. Louis, MO, for Respondent.

ROBERT M. CLAYTON III, Judge.

BNSF Railway Company ("BNSF") appeals the trial court's judgment entered upon a jury verdict in favor of Lawrence Mickey on his petition for negligence pursuant to the Federal Employers' Liability Act ("FELA"). We affirm.

## I. BACKGROUND

Mickey began working for BNSF at age 19 as a switchman. Throughout his forty years working for BNSF, he performed various duties. These included throwing switches, climbing on and off cars, hanging on cars, tying and releasing handbrakes, and coupling air hoses. There would be debris and slippery spots in the yard while he performed his work. Mickey ultimately saw his physician, George R. Schoedinger, III, M.D., in September 2007, and was told he suffered permanent disability in his back and was unable to return to work. A few days later Mickey discovered he also had disability in his knees. Mickey filed suit against BNSF pursuant to the FELA for his permanent disabilities. A jury re-

turned a verdict in favor of Mickey for $345,000.00. BNSF filed a motion for new trial, and the trial court denied the motion. BNSF now appeals.

## II. DISCUSSION

BNSF asserts five points on appeal. In points one, two, three, and five, BNSF claims instructional error. First, BNSF claims the trial court erred in refusing to submit its proposed statute of limitations instruction to the jury. Second, BNSF argues the court erroneously refused to submit an instruction concerning the apportionment of damages. In point three BNSF argues the trial court erred in refusing to submit three withdrawal instructions, and in its fifth and final point, BNSF claims the court erred in refusing to submit a proximate cause instruction to the jury which was proffered by BNSF. BNSF's fourth point on appeal claims the trial court erred in excluding evidence of the previous settlement of separate claims made by Mickey.

### A. Instructional Error

#### 1. Standard of Review

We review BNSF's claim of instructional error for abuse of discretion. *Mengwasser v. Anthony Kempker Trucking, Inc.*, 312 S.W.3d 368, 372 (Mo.App. W.D.2010). The trial court abuses its discretion if its decision is clearly against the logic of the circumstances and so unreasonable and arbitrary as to shock the sense of justice and indicate a lack of careful consideration. *Id.*

#### 2. Statute of Limitations

In its first point on appeal BNSF claims the trial court erred in refusing to instruct the jury on the issue of the statute of limitations because there was evidence Mickey suffered knee and back problems and knew his work was causing the prob-

lems more than three years before he filed suit.

Pursuant to 45 U.S.C. Section 56, no action under the FELA may be maintained "unless commenced within three years from the day the cause of action accrued." Generally, in traumatic injury cases the effects of the injury are immediately apparent, and therefore, the cause of action accrues at that point. *Sabalka v. Burlington Northern and Santa Fe Ry. Co.*, 54 S.W.3d 605, 609 (Mo.App. W.D. 2001). However, in cases of occupational disease in which the plaintiff alleges an ongoing, continuous exposure to an occupational condition which accumulates and ultimately creates the disability, the statute begins to run when the accumulated effects manifest themselves. *Id.* Thus, an FELA claim for such a condition accrues when the plaintiff knows or should have known in the exercise of reasonable diligence that he is injured and the cause of such injury. *Id.* The purpose of the statute of limitations in the FELA is to protect the railroads from having to defend claims where evidence is lost, memories are not as reliable, or witnesses are unavailable. *Id.* at 612. It is not to prevent claims if the employee reasonably believed his intermittent and transitory symptoms are instances of "mild inflammation" which would continue to resolve. *Id.* at 612–13.

Whether a claim is barred by the statute of limitations is generally a question of law. *Id.* at 609. The issue can be submitted to the jury for resolution only if there is evidence concerning the date of the accrual of the cause of action from which different inferences could be drawn. *Id.*

In this case, BNSF submitted Instructions F and G at trial, which presented the issue of whether Mickey knew or should have known of his injuries to his knees and back respectively prior to May 12, 2005, to

the jury. BNSF argues there was evidence that Mickey complained of his knee and back problems in 2003. Mickey filed his petition in 2008, and therefore, BNSF argues there was evidence from which the jury could have concluded Mickey knew or should have known of his injuries and their causes more than three years prior to the filing of the action. This argument is without merit.

BNSF's argument centers largely upon Mickey's reported complaints of back pain to BNSF in 2003. At the time, Mickey was referred to James T. Doll, M.D. for evaluation. Mickey testified Dr. Doll told him nothing was wrong, and Mickey returned to work on full duty. Dr. Doll's report, dated September 10, 2003, notes Mickey's current complaints and prior history of back problems, as well as Mickey's report that the back injury for which Dr. Doll was seeing Mickey was work-related. However, Dr. Doll's ultimate conclusion at the time was that Mickey would not have "any permanent partial disability from the above-described injury . . . ."

Although there was clearly evidence that Mickey suffered back and knee pain more than three years prior to the filing of his claim, the evidence does not meet the threshold required to submit the issue of the statute of limitations to the jury in this case. The evidence showed that Mickey suffered intermittent pain in his back and knee over the course of several years. When the pain worsened, he sought medical treatment, was treated, and returned to work on full duty. As the court in *Sabalka* notes, an employee is not considered to be injured "whenever the employee is aware of any symptom, even a temporary symptom." 54 S.W.3d at 611. The evidence from Mickey's visit to Dr. Doll in 2003 was simply that he suffered pain in his back and was ultimately told it was an aggravation of a prior injury and not a permanent condition.

Although Mickey did testify he believed his back and knee symptoms were work-related as early as 2003, there was no reason for him to believe any permanent injury had occurred until he saw Dr. Schoedinger in September 2007. Dr. Schoedinger diagnosed Mickey with degenerative disc disease, and Mickey testified this was the first time he was aware of any permanent disability in his back. It was shortly thereafter Mickey learned of any permanent disability in his knee. These permanent, work-related injuries which caused him to no longer be able to work were the injuries for which Mickey filed a claim against BNSF. Thus, based upon the record, there was no evidence to indicate Mickey knew or reasonably should have known he was permanently injured before September 2007, even given his continuing complaints of back and knee pain throughout the years. Therefore, the trial court did not abuse its discretion in refusing to submit BNSF's proffered instructions F and G concerning the issue of the statute of limitations to the jury. Point one is denied.

### 3. Apportionment of Damages

■ In its second point on appeal, BNSF claims the trial court erred in refusing to submit its proposed Instruction D to the jury concerning the allocation of damages between Mickey's preexisting conditions and any aggravation of those conditions caused by BNSF's negligence. BNSF claims such an instruction was allowed by law and supported by the evidence because BNSF was liable only to the extent its negligence aggravated Mickey's preexisting conditions and not for the prior injuries.

In an FELA action, pursuant to 45 U.S.C. Section 51, an injured employee may recover all of his damages from an employer if the employer's negligence caused the injury "in whole or in part." The United States Supreme Court dis-

cussed this provision extensively in *Norfolk Western Railway Company v. Ayers*, 538 U.S. 135, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003). BNSF argues the *Ayers* decision does not overturn precedent allowing allocation of damages between a preexisting injury and aggravation of that injury because BNSF was not seeking apportionment of damages between railroad and non-railroad causes. However, we find the *Ayers* decision applicable here.

*Ayers* concerned former railroad employees who filed suit against the railroad alleging negligent exposure to asbestos. 538 U.S. at 140, 123 S.Ct. 1210. Some of the employees' exposure occurred prior to their employment with the railroad, and the railroad sought to instruct the jury to apportion damages between the railroad and the previous employers alleged to have contributed to the employees' asbestosis. 538 U.S. at 143, 123 S.Ct. 1210. The trial court refused to submit such an instruction to the jury, and the United States Supreme Court ultimately affirmed that decision, finding that pursuant to 45 U.S.C. Section 51, such apportionment of damages was not authorized. *Id.* at 159, 123 S.Ct. 1210. The Court specifically held the statutory language supports the conclusion that "the FELA does not authorize apportionment of damages between railroad and nonrailroad causes." *Id.* at 159–60, 123 S.Ct. 1210. The Court further concluded nothing in the language of the statute mandates that the amount of damages for which an employer is liable be reduced if the negligence of a third party also contributed in part to the injury for which the claim is filed. *Id.* at 160, 123 S.Ct. 1210. In cases where an injury has multiple causes, some related to railroad employment, and others not related to such employment, the railroad is liable for damages if the injury was caused "in whole or in part" by the railroad's negligence. *Id.* at 160–61, 123 S.Ct. 1210 (citing 45 U.S.C. Section 51).

Here, there was evidence that Mickey suffered injuries unrelated to his work at BNSF. However, there was also sufficient evidence from which the jury could have concluded that Mickey's injuries, or the aggravation thereof, was caused "in whole or in part" by BNSF's negligence. As a result, based upon the Court's decision in *Ayers*, even where an injury has multiple causes, apportionment of damages is not appropriate. 538 U.S. at 160–61, 123 S.Ct. 1210. Thus, the trial court did not abuse its discretion when it refused to submit BNSF's proposed Instruction D, which sought apportionment of damages between preexisting conditions and aggravation of the injuries. Point two is denied.

### 4. Withdrawal of Evidence

■ In its third point on appeal, BNSF claims the trial court erred in refusing to give its proposed Instructions H1, H2, and H3, purporting to withdraw the issue of damages from Mickey's prior injuries from the jury. H1 concerned damages from Mickey's back injury in 1973; H2 concerned damages from Mickey's knee injury in 1998; and H3 concerned damages from Mickey's back injury in 2003.

Mickey responds by claiming BNSF failed to preserve this issue for appeal because BNSF makes only "vague" references to withdrawal instructions in its motion for new trial, and therefore, we may only review the matter for plain error. BNSF argues the withdrawal instructions at issue on appeal were the only withdrawal instructions offered. As a result, BNSF claims it was not required to list the instructions by specific number in its motion for new trial to preserve the claim for appeal. Regardless of whether the issue was properly preserved by specific reference to the instructions by number in BNSF's motion for new trial, the court did not err, plainly or otherwise, in refusing BNSF's withdrawal instructions.

■ Withdrawal instructions may be given if there is evidence presented which might mislead the jury in its consideration of the case as pleaded and submitted, or there is evidence that might raise a false issue. *Haffey v. Generac Portable Products, L.L.C.*, 171 S.W.3d 805, 810 (Mo.App. S.D.2005). Withdrawal instructions are also appropriate to clarify damages to the jury. *Id.*

BNSF argues that its proposed withdrawal instructions were necessary to clarify the issue of damages for the jury and avoid misleading the jury about injuries for which Mickey could be compensated. This argument is without merit. Mickey was allowed to testify about the prior injuries, but as discussed in subsection C below, evidence of any compensation or settlement for such claims was properly excluded. Mickey did not claim damages for the injuries he suffered in 1973, 1998, or 2003. Instead, his petition sought damages for injuries first discovered in September 2007. Testimony concerning previous injuries did not mislead the jury or create a false issue. Instead, such testimony was relevant to the overall picture of Mickey's health and the subsequent injuries upon which his claim against BNSF was based. Thus, the trial court did not err, plainly or otherwise, in refusing withdrawal instructions concerning damages from Mickey's injuries in 1973, 1998, and 2003. Point three is denied.

### 5. Proximate Cause

■ In its fifth point on appeal, BNSF argues the trial court erred in refusing to give its proposed Instruction E, which required the jury to find that BNSF's negligence was a proximate cause of Mickey's injuries. BNSF argues that the FELA does not abrogate the common law requirement of proximate cause, and the elements of an FELA claim should be determined by reference to common law.

BNSF claims the United States Supreme Court decision in *Rogers v. Missouri Pacific Railroad*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) did not hold that the FELA abrogated the common law requirement of proximate cause, and therefore, the instruction BNSF submitted should have been given to the jury. This argument is without merit.

The United States Supreme Court specifically addressed this issue in *CSX Transportation, Inc. v. McBride*, —— U.S. ——, 131 S.Ct. 2630, 180 L.Ed.2d 637 (2011). In *McBride,* the employee suffered a hand injury while switching railroad cars and filed suit against the railroad under the FELA. *Id.* at 2635. The trial court refused to submit the railroad's proposed instruction requiring the jury to find that its negligence was the proximate cause of the employee's injury. *Id.* The United States Supreme Court held that in accord with the FELA and the Court's previous decision in *Rogers*, the FELA did not incorporate the proximate cause standards from common law tort actions. *Id.* at 2638. The Court noted a "relaxed standard of causation" applies under the FELA in comparison to common law tort actions. *Id.* at 2636. The single inquiry is whether the employer's negligence played any part at all in causing the employee's injury. *Id.* at 2638 (citing Rogers, 352 U.S. at 508, 77 S.Ct. 443). The *McBride* Court concluded the holding in *Rogers* was a comprehensive statement of the standard of causation in FELA cases. *Id.* at 2638. As a result, the Court held it was not error in an FELA case to refuse an instruction containing proximate cause language. *Id.* at 2644.

Based upon the United States Supreme Court's holding in *McBride* and the previous decision in *Rogers,* the trial court did not abuse its discretion when it rejected BNSF's proposed Instruction E, submitting the issue of whether BNSF's negli-

gence was a proximate cause of Mickey's injuries. Point five is denied.

### B. Exclusion of Evidence

■ In its fourth point, BNSF claims the trial court erred in excluding evidence that Mickey had settled and released BNSF from prior claims of injury to his back and knees. BNSF argues this evidence was relevant to the jury's determination of damages, and BNSF was prejudiced by the exclusion of such evidence because the jury was not told Mickey had been compensated for prior injuries.

■ "In FELA cases tried in state courts, the admission or exclusion of evidence is a procedural matter governed by the law of the forum state." *Clark v. Missouri & Northern Arkansas RR. Co., Inc.*, 157 S.W.3d 665, 673 (Mo.App. W.D. 2004). Under Missouri law, the trial court has broad discretion concerning the admission or exclusion of evidence. *Id.* Absent an abuse of that discretion, we will not reverse the trial court's decision in this regard. *Id.* The trial court abuses its discretion if the ruling is so clearly against the logic of the circumstances and is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration. *Id.* The trial court has discretion to determine whether evidence is relevant, and we will not reverse that determination absent an abuse of discretion. *Burrows v. Union Pacific R. Co.*, 218 S.W.3d 527, 540 (Mo.App. E.D.2007).

Here, BNSF sought to present evidence to the jury that Mickey had settled claims against the railroad for prior injuries in 1973 and 2003, and Mickey released BNSF from liability for those injuries. The trial court ruled that BNSF could present evidence that Mickey claimed damages for the prior injuries; however, the court determined BNSF could not say Mickey received compensation for the claims. This decision was not an abuse of discretion.

At trial BNSF made an offer of proof that Mickey settled claims with BNSF in 1973 and 2003 for injuries to his back related to work. As previously noted, the current suit was filed claiming damages for injuries Mickey alleged first manifested in September 2007. Any evidence concerning settlement, release of liability, or compensation for prior claims was irrelevant to the jury's consideration of BNSF's liability for damages from injuries manifesting in September 2007. Therefore, the trial court did not abuse its discretion in excluding evidence of the settlement of Mickey's prior suits in 1973 and 2003. Point four is denied.

### III. CONCLUSION

The judgment is affirmed.

PATRICIA L. COHEN, P.J., and MARY K. HOFF, J., concur.